**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Christine M. Arguello**

Civil Action No. 11-cv-00001-CMA-MEH
(Consolidated with 11-cv-00743-CMA-MEH)

WILDEARTH GUARDIANS,
NATIONAL PARKS CONSERVATION ASSOCIATION, and
ENVIRONMENTAL DEFENSE FUND,

      Plaintiffs,

v.

LISA P. JACKSON, in her official capacity as Administrator,
   United States Environmental Protection Agency,

      Defendant,

STATE OF NORTH DAKOTA, and
NORTH DAKOTA DEPARTMENT OF HEALTH,

      Intervenors.

---

## ORDER ENTERING CONSENT DECREE

---

These consolidated cases involve claims that Defendant Lisa P. Jackson, in her

official capacity as Administrator of the Environmental Protection Agency ("EPA"), failed

to undertake nondiscretionary duties under the Clean Air Act ("CAA" or "the Act")

sections 110(c) and (k), 42 U.S.C. § 7410(c) and (k).  The duties relate to regional haze

implementation plan requirements for the States of Colorado, Montana, North Dakota,

and Wyoming.  On June 6, 2011, all Plaintiffs and Defendant ("the Settling Parties")

lodged a proposed Consent Decree (the "Proposed CD") with the Court that completely

resolves all claims in these two consolidated cases.  (Doc. # 35-1.)  Currently pending

before the Court is the Settling Parties' Motion to Enter Consent Decree, filed on August

12, 2011.  (Doc. # 49.)  Intervenors State of North Dakota and the North Dakota

Department of Health (collectively, "North Dakota") oppose the entry of the Proposed

CD.  (Doc. # 56.)

Jurisdiction is proper pursuant to 28 U.S.C. § 1331 (federal question) and 42

U.S.C. § 7604(a)(2) (citizen suit provision of the CAA).  For the following reasons, the

Court grants the Settling Parties' Motion to Enter Consent Decree (Doc. # 49) and will

enter the Proposed CD.

## I. BACKGROUND

### A.    THE CLEAN AIR ACT

"The purpose of the [CAA] is to control and improve the nation's air quality

through a combination of state and federal regulation."  *Ariz. Pub. Serv. Co. v. EPA*, 562

F.3d 1116, 1118 (10th Cir. 2009); *see also* 42 U.S.C. § 7401 (congressional findings

and declaration of purposes).  In 1977, Congress amended the CAA and established as

a national goal "the prevention of any future, and the remedying of any existing,

impairment in visibility in mandatory class I areas which impairment results from

manmade air pollution."  42 U.S.C. § 7491.  To meet this goal, the CAA mandates the

promulgation of regulations to prevent the impairment of visibility in class I areas.[1]  *See*

*id.* §§ 7491(b), 7492(e).

---

[1]  "Class I" areas consist of all international parks, national wilderness areas that exceed 5,000 acres in size, national memorial parks that exceed 5,000 acres in size, and national parks that exceed six thousand acres in size.  42 U.S.C. § 7472.

Under the CAA, each State is required to develop and submit, for the EPA's review and approval, a State Implementation Plan ("SIP") indicating how it will implement, maintain, and enforce the Act's air quality standards and prevent the impairment of visibility in class I areas.  *See id.* §§ 7410(a), 7492(e)(2).  Among other things, SIPs must include enforceable emission limits and other control measures, means, or techniques designed to ensure that states meet the standards promulgated by the EPA.  *See id.* § 7410(a)(2).  States are required to update or revise their SIPs whenever the EPA promulgates new standards and regulations, and must then submit revised SIPs to the EPA for approval.  *See id.* § 7410(a)(1).

When the EPA determines that a SIP is complete (or it is deemed complete by operation of law), the EPA must then approve or disapprove of the SIP in whole or in part within 12 months.  *Id.* § 7410(k)(2)-(3).  If a state fails to submit a SIP, submits an incomplete SIP, or if the EPA disapproves of the SIP in whole or in part, the EPA must then promulgate its own plan, called a Federal Implementation Plan ("FIP").  *See id.* § 7410(c).  The Act requires the EPA to promulgate FIPs within two years of such a finding or disapproval "unless the State corrects the deficiency, and the Administrator approves the plan or plan revision, before the Administrator promulgates such [a FIP]." *Id.*

**B.   FACTS**[2]

On July 1, 1999, the EPA promulgated regulations aimed at reducing regional

haze.[3]   *See* 64 Fed. Reg. 35,714 (July 1, 1999).   After these regulations were

challenged, the Court of Appeals for the District of Columbia issued a ruling vacating in

part and sustaining in part the regional haze regulations.   *See Am. Corn Growers Ass'n*

*v. EPA*, 291 F.3d 1 (D.C. Cir. 2002).   The EPA subsequently revised the regional haze

regulations and required states to submit revised SIPs by December 17, 2007.   *See* 40

C.F.R. § 51.308 (2006).

On January 15, 2009, the EPA published in the *Federal Register* a finding that

North Dakota, as well as Colorado, Montana, Wyoming and 33 other states, had failed

to submit SIPs or had submitted incomplete SIPs by the December 17, 2007 deadline.

*See* 74 Fed. Reg. 2392 (Jan. 15, 2009).   The EPA acknowledged that this finding

started "the two year clock for the promulgation by EPA of a FIP."   *Id.*   Accordingly, the

EPA was required to promulgate a FIP for these states by January 15, 2011, unless a

state submitted a regional haze SIP, and the EPA approved that SIP, within that two

year period.   *Id.*

---

[2]  Because North Dakota is the only state that has intervened or objected to the
Proposed CD, the Court will set forth the facts and procedural history only as they relate to
North Dakota.  The facts are taken from the Amended Complaint (Doc. # 21), unless otherwise
noted.  The facts do not appear to be in dispute.

[3]  Regional haze is visibility impairment produced by a multitude of sources and activities
that emit fine particles and their precursors into the air across a broad geographic area.  The
emission and movement of sulfur dioxide, oxides of nitrogen, and fine particular matter (*e.g.*,
sulfates, nitrates, organic carbon, elemental carbon, and soil dust) "impairs visibility by
scattering and absorbing light." 64 Fed. Reg. 35,714 (July 1, 1999).

On March 3, 2010, North Dakota submitted a regional haze SIP (the "RH SIP") to the EPA.  North Dakota's RH SIP was deemed complete on April 30, 2010.  (Doc. # 56 at 6.)  North Dakota supplemented its RH SIP on August 3, 2010 and again on July 28, 2011.  (*Id.*)  At the time this action was commenced, the EPA had not approved or disapproved of the RH SIP, or promulgated a FIP for North Dakota, even though the January 15, 2011 deadline had passed.  (Doc. # 21, ¶ 75-78.)  However, pursuant to a consent decree entered in a separate case filed in the District Court for the Northern District of California, the EPA proposed, on September 1, 2011, a partial approval of North Dakota's RH SIP and a partial FIP to fill the gaps.[4]

North Dakota submitted a separate SIP (the "Excess Emissions SIP") to the EPA on April 6, 2009 containing regulations relating to excess emissions from polluting sources during startup, shutdown, malfunction, and maintenance.  (Doc. # 21, ¶ 38.)  Either in fact or by operation of law, North Dakota's Excess Emissions SIP was considered administratively complete by October 6, 2009.  (*Id.*, ¶ 56.)   Thus, the EPA had a mandatory duty to fully or partially approve or disapprove that SIP by no later than October 6, 2010.  (*Id.* at ¶ 57.)   The EPA has yet to approve or disapprove of North Dakota's Excess Emissions SIP.

---

[4]  *See WildEarth Guardians v. Jackson*, No. 00-cv-02453, Doc. # 26 (N.D. Cal. Feb. 23, 2010) (order entering consent decree).  In that case, the plaintiff had alleged that the EPA had failed to undertake a nondiscretionary duty to act on North Dakota's interstate transport SIP under 42 U.S.C. § 7410(a)(2)(D)(I).  Because the regulatory responses for interstate transport can be related to regional haze requirements, the EPA also acted on North Dakota's RH SIP. The EPA published the EPA's September 1, 2011 proposal in the *Federal Register* on September 21, 2011.  *See* 76 Fed. Reg. 58,570 (Sept. 21, 2011).

C.     **PROCEDURAL HISTORY**

On October 13, 2010, Plaintiff WildEarth Guardians ("Guardians") provided the

EPA with written notice of its claims concerning the EPA's failure to take action on North

Dakota's Excess Emissions SIP.  (Doc. # 21, ¶ 9.)  Guardians then filed an initial

complaint on January 2, 2011 (Doc. # 1), and a Motion for Partial Summary Judgment

on Liability on February 15, 2011.  (Doc. # 9.)

On January 19, 2011, Guardians and Plaintiff National Parks Conservation

Association ("NPCA") (collectively, "Guardians/NPCA") provided the EPA with written

notice of their claims concerning the EPA's failure to promulgate a regional haze FIP

for North Dakota.   (Doc. # 21, ¶ 11.)  Guardians/NPCA filed an Amended Complaint

on March 30, 2011.  (Doc. # 21.)  The Amended Complaint added NPCA as a party

plaintiff and asserted five additional claims for relief, including a claim that the EPA

failed to perform its non-discretionary duty to promulgate a regional haze FIP for North

Dakota.  (Doc. # 21, ¶¶ 74-79.)

The Settling Parties[5] lodged the Proposed CD with the Court on June 6, 2011.

(Doc. # 35.)  However, the Settling Parties requested that the Court delay ruling on the

Proposed CD in order to allow the EPA to comply with CAA section 113(g), which

requires that notice and a reasonable opportunity to comment on consent decrees

---

[5] Plaintiff Environmental Defense Fund ("EDF") filed a separate complaint on March 21, 2011 in Civil Action No. 11-cv-00743, which was then consolidated with Civil Action No. 11-cv-00001 on April 1, 2011, pursuant to Fed. R. Civ. P. 42(a) (Doc. # 24).  EDF's complaint did not assert any claims that concerned North Dakota.   The Proposed CD, however, also resolves EDF's claims against the EPA.  Thus, EDF is included when the Court refers to the "Settling Parties."

be given to the public through publication in the *Federal Register*. *See* 42 U.S.C. § 7413(g).  In light of the mandatory notice-and-comment process, the Settling Parties requested, and the Court granted, a stay on all proceeding during the notice-and-comment period.  (Doc. ## 35, 36.)

On June 15, 2011, the EPA filed notice of the Proposed CD in the *Federal Register*, soliciting public comments thereupon.  *See* 76 Fed. Reg. 34982-01 (June 15, 2011).  The EPA received 3,295 nearly identical "form" comments and 13 additional comment letters on the Proposed CD.  (Doc. # 49 at 7.)  During the notice-and-comment period, North Dakota filed, simultaneously, an Unopposed Motion to Intervene and a Motion to Dismiss. (Doc. ## 38, 40.)  The Court granted North Dakota's Motion to Intervene on August 9, 2011.  (Doc. # 47.)   In its Motion to Dismiss, North Dakota moves to dismiss Plaintiff's second and fifth claims for relief.  (*See* Doc. # 21, ¶¶ 54-60, 74-79.)  That motion has been fully briefed.  (Doc. ## 40, 52, 58.)  The EPA and the Department of Justice found that none of the factual or legal issues raised by the commentators, or by North Dakota in its Motion to Dismiss, required the Settling Parties to modify the decree.  (Doc. # 49 at 9.)  Accordingly, the Settling Parties moved the Court to enter the Proposed CD on August 12, 2011.  (*Id*.)  North Dakota responded on September 2, 2011 (Doc. # 56), and the Settling Parties replied on September 21, 2011. (Doc. # 65.)

## II. **LEGAL STANDARD**

## A.     **APPROVAL OF CONSENT DECREE**

"A consent decree is primarily a means by which parties settle their disputes without having to bear the financial and other costs of litigating." *Local No. 93, Int'l Ass'n of Firefighters v. City of Cleveland*, 478 U.S. 501, 529 (1986).  A consent decree that is entered in federal court "must be directed to protecting federal interests." *Frew v. Hawkins*, 540 U.S. 431, 437 (2004).  In *Firefighters*, the Supreme Court observed that a federal consent decree must: (1) spring from and serve to resolve a dispute within the court's subject matter jurisdiction; (2) come within the general scope of the case based on the pleadings; and (3) further the objectives of the law on which the claim is based. *See* 478 U.S. at 525.

A district court may either approve or deny the issuance of a consent decree; however, it is "not entitled to change the terms of the agreement stipulated to by the parties." *United States v. State of Colo.*, 937 F.2d 505, 509 (10th Cir. 1991) (stating that "the district court is faced with the option of either approving or denying the decree").  If deficiencies are found, it is proper for the district court to advise the parties of its concerns and allow them to submit a revised decree.  *See id.*

Because a consent decree bears the imprimatur of judicial approval, a district court "must ensure that the agreement is not illegal, a product of collusion, or against the public interest." *Id.*  Moreover, a district court must also determine that the decree is

8

"fair, adequate, and reasonable before it is approved." *Id.*; *see also United States v. Telluride Co.*, 849 F. Supp. 1400, 1402 (D. Colo. 1994) (stating that the relevant standard is whether the proposed decree "is fair, reasonable and equitable[,] and does not violate law or public policy.").

Fairness contains both procedural and substantive components. *United States v. Cannons Eng'g Corp.*, 899 F.2d 79, 86 (1st Cir. 1990). "To measure procedural fairness, a court should ordinarily look to the negotiation process and attempt to gauge its candor, openness, and bargaining balance." *Id.* A substantively fair consent decree incorporates "concepts of corrective justice and accountability: a party should bear the cost of harm for which it is legally responsible." *Id.* at 87. Substantive fairness overlaps with the requirement that the decree be equitable. *See Colo. v. City & Ctny. of Den.*, No. 10-cv-1303, 2010 WL 4318835, at *4 (D. Colo. Oct. 22, 2010).

In determining whether the Proposed CD is reasonable, the Court must consider such factors as whether the decree is in the public interest and upholds the objectives of the CAA, whether the decree is technically adequate to accomplish the goal of cleaning the environment, and whether it reflects the relative strength or weaknesses of the Settling Parties' positions. *See United States v. Kerr-McGee Corp.*, No. 07-cv-01034, 2008 WL 863975, at *5 (D. Colo. Mar. 26, 2008).

In conducting its analysis, a district court should be mindful of the strong policy favoring the voluntary settlement of disputes. *Id.* Further, judicial deference to

settlements is particularly strong where the consent decree has been negotiated by the EPA, "which enjoys substantial expertise in the environmental field." *Id*. Thus, although "a district may not simply rubber stamp a consent decree, it 'must defer heavily to the parties' agreement and the EPA's expertise.'" *Id*. (quoting *United States v. Charles George Trucking*, 34 F.3d 1081, 1085 (1st Cir. 1994)).

### III. ANALYSIS

The Proposed CD establishes a schedule for the EPA to sign notices of proposed and final rulemakings in which it acts upon regional haze SIPs and/or promulgates FIPs. With respect to the claims related to North Dakota, the Proposed CD requires the EPA to sign a notice of proposed rulemaking that either proposes approval of a regional haze SIP in whole or in part, or proposes a regional haze FIP in whole or in part, for North Dakota. (*See* Doc. # 49-1, ¶ 4.) The EPA appears to have already complied with this requirement through its September 1, 2011 proposal by partially approving North Dakota's RH SIP and promulgating a partial FIP. (Doc. # 65 at 3.)

The Proposed CD requires the EPA to sign a notice of final rulemaking promulgating a FIP for North Dakota by January 26, 2012, unless the EPA has already signed a notice of final rulemaking unconditionally approving a SIP or promulgating a partial FIP and partial unconditional approval of a SIP. (*See id.*, ¶ 5.) The Proposed CD also provides that by the later of October 27, 2011, or within 20 days after the entry date

of the Proposed CD, the EPA shall sign a notice of final rulemaking in which it takes final action on North Dakota's Excess Emissions SIP.  (*See id.*, ¶ 3.)

In its Response to the Motion to Enter Consent Decree, North Dakota contends that the Court lacks subject matter jurisdiction over this case, that the Proposed CD violates the CAA, that the Proposed CD is procedurally and substantively unfair and unreasonable, and that there is an inadequate record before the Court upon which it can assess the adequacy and reasonableness of the Proposed CD.  (*See* Doc. # 56.)

The Court begins its analysis with determining whether it possesses subject-matter jurisdiction over this case.  Provided that the Court has subject-matter jurisdiction, the Court will turn to the question of whether the proposed CD is "fair, reasonable and equitable and does not violate law or public policy."  *Telluride Co.*, 849 F. Supp. at 1402.

## A.     SUBJECT MATTER JURISDICTION

North Dakota raises two arguments that potentially implicate the Court's subject-matter jurisdiction.  First, North Dakota contends that Guardians/NPCA's claims that relate to North Dakota are moot because of the EPA's September 1, 2011 proposal.  Second, North Dakota asserts that Guardians/NPCA provided insufficient notice to the EPA and to North Dakota of their intent to file suit.  The Court will address each argument in turn.

1.    Mootness

"Mootness is a threshold issue because the existence of a live case or controversy is a constitutional prerequisite to federal court jurisdiction." *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1109 (10th Cir. 2010) (quoting *Disability Law Ctr. v. Millcreek Health Ctr.*, 428 F.3d 992, 996 (10th Cir. 2005)). "Mootness is implicated when a case or controversy, originally present, ceases to exist." *Smallwood v. Scibana*, 227 F. App'x 747, 748 (10th Cir. 2007).  Even if the Court possesses subject-matter jurisdiction at the inception of an action, the Court is deprived of subject-matter jurisdiction if a case becomes moot at any time during the pendency of the action.  *Id.*

North Dakota contends that the EPA's September 1, 2011 proposal "eliminates any alleged claim or controversy Plaintiffs asserted against EPA with respect to North Dakota in this case."  (Doc. # 56 at 14.)  However, North Dakota vastly overstates the importance of the EPA's proposal to the claims in this case.

The September 1, 2011 proposal resolves paragraph 4 of the Proposed CD, which requires the EPA to issue a proposed rulemaking by July 21, 2011 or within 20 days of entry of the Proposed CD.  (*See* Doc. # 49-1, ¶ 4.)  However, the fact that the EPA has already complied with one provision of the Proposed CD does not mean that the underlying claims have become moot.

12

Guardians/NPCA's fifth claim for relief alleges that the EPA has failed to undertake its nondiscretionary duty to promulgate a full regional haze FIP for North Dakota.  The September 1, 2011 proposal is only that, a proposal.  It is not a final rulemaking.  Only a final rulemaking will satisfy the EPA's duty to promulgate a regional haze implementation plan.  A final rulemaking has not yet taken place; thus, there remains a live controversy.  The Proposed CD will resolve this controversy by requiring the EPA to sign a notice of final rulemaking by January 26, 2012.  (Doc. # 49-1, ¶ 5.)  Additionally, the Court notes that the EPA's September 1, 2011 proposal appears to have no bearing on Guardians/NPCA's second claim for relief, *i.e.*, that the EPA has not taken action on North Dakota's Excessive Emissions SIP.[6]

 Accordingly, there remains a live controversy with respect to both of Guardians/NPCA's claims that relate to North Dakota.  Thus, the EPA's September 1, 2011 proposal does not deprive the Court of subject-matter jurisdiction.

   2.   Whether Guardians/NPCA Provided Sufficient Notice

North Dakota argues that the Court lacks subject-matter jurisdiction to enter the Proposed CD because Plaintiffs failed to provide North Dakota with the requisite notice of its intent to sue the EPA.[7]  (Doc. # 56 at 15.)  Guardians/NPCA brought this case

---

[6] North Dakota has made no argument as to how the September 1, 2011 proposal would resolve this claim.

[7] The Court observes that, even if this were an unreasonable delay action, it is far from clear that failure to provide sufficient notice is a jurisdictional issue as asserted by North Dakota.  In *Hallstrom v. Tillamook County*, the Supreme Court considered a 60-day notice

under the citizen-suit provision of the CAA, specifically 42 U.S.C. § 7604(a)(2), which

provides any person with a cause of action "where there is alleged a failure of the

Administrator to perform any act or duty under [the Act] which is not discretionary."

North Dakota asserts, however, that this is really an action for unreasonably delay

under 42 U.S.C. § 7604(a).

Although a plaintiff is required to give notice to the EPA before commencing

either a nondiscretionary duty or an unreasonable delay action, the notice requirements

differ significantly.  When a plaintiff alleges that the EPA failed to perform a nondis-

cretionary duty under § 7604(a)(2), the plaintiff must give notice to the EPA at least

60 days prior to commencing the action.  *Id.* § 7604(b)(2).  It is undisputed that

Guardians/NPCA provided sufficient notice to the EPA to commence a § 7604(a)(2)

nondiscretionary duty action.  To bring an action for unreasonable delay, the plaintiff

must give notice to the EPA, to the State in which the violation occurs, and to any

alleged violator of the standard, limitation, or order, at least 180 days prior to

_____

provision virtually identical to the one at issue in this case, and held that "the notice and 60-day
delay requirements are mandatory conditions precedent to commencing suit."  492 U.S. 20, 31
(1989).  However, *Hallstrom* expressly declined to decide "whether the [notice provision] is
jurisdictional in the strict sense of the term."  *Id.* at 31.  The Tenth Circuit has also declined to
address this issue: "we need not decide the intriguing issue so carefully left open by *Hallstrom* -
whether a mandatory precondition to suit is a component of non-waivable 'subject matter
jurisdiction.'" *N.M. Citizens for Clean Air and Water v. Espanola Mercantile Co., Inc.,* 72 F.3d
830, 834 n.2 (10th Cir. 1996).  This is potentially an important distinction because, although a
court may enter a consent decree that provides for greater relief than the court could award
after a trial, *see Firefighters*, 478 U.S. at 525, it cannot enter a consent decree if it lacks subject
matter jurisdiction over the underlying action.  *Id.*  However, the Court need not tackle this
thorny issue because the Court agrees with the Settling Parties that this is a nondiscretionary
duty action, and Plaintiffs complied with the notice requirements to bring such an action.

commencing the action.  *Id.* § 7604(a).  It is undisputed that Guardians/NPCA did

not provide sufficient notice to commence a § 7604(a) unreasonable delay action.

 The Court finds that the claims asserted by Guardians/NPCA are nondis-

cretionary duty claims under 42 U.S.C. § 7604(a)(2).  The Court's analysis begins and

ends with the plain language of the CAA.  Both the statutory obligation to promulgate

FIPs, under 42 U.S.C. § 7410(c), and the statutory obligation to approve or disapprove

SIPs, under 42 U.S.C. § 7410(k), contain bright-line deadlines of two years and one

year, respectively, by which the EPA must act.  Specifically, § 7410(c) provides that the

"Administrator **shall** promulgate a [FIP] at any time within 2 years . . .," and § 7410(k)(2)

provides that "the Administrator **shall** act on the submission" from a State within 12

months of finding it complete. (Emphasis added).

 "'Shall' means shall."  *Forest Guardians v. Babbit*, 164 F.3d 1261, 1268 (10th Cir.

1998) (emphasis removed). The use of the word "shall" means that Congress has

imposed a mandatory duty.  *See id.* at 1268-69; *North v. Cummings*, 355 F. App'x 133,

142 (10th Cir. 2009) ("The word 'shall' is mandatory, not discretionary."); *United States

v. Mosanto*, 491 U.S. 600, 607 (1989) (by using "shall" in civil forfeiture statute,

"Congress could not have chosen stronger words to express its intent that forfeiture

be mandatory in cases where the statute applied").

 In its Response, North Dakota ignores the plain language of the CAA and makes

no attempt to distinguish the plethora of on-point cases cited by the Settling Parties.

Instead, North Dakota contends that the EPA's duties must be discretionary because

the EPA did not comply with the statutory deadlines and then negotiated with Plaintiffs in establishing an acceptable schedule.  North Dakota points to nothing in the CAA or to any case law that would support this specious argument.  The fact that a federal agency does not act in accordance with a bright-line deadline imposed by Congress does not render the deadline a mere suggestion or make the requisite act any less mandatory.  Where, as here, a statute sets forth a bright-line rule for agency action, "there is no room for debate[,] [C]ongress has prescribed a categorical mandate that deprives EPA of all discretion over the timing of its work." *Am. Lung Ass'n v. Reilly*, 962 F.2d 258, 263 (2d Cir. 1992); *see also Sierra Club v. Leavitt*, 355 F. Supp. 2d 544, 552 n.3 (D.D.C. 2005) (stating that "because the regulation created a mandatory duty, this is a suit to compel that the duty be performed, as opposed to a suit based on unreasonable delay by an agency to take action.").  Thus, the fact that EPA negotiated deadlines acceptable to it in the context of settlement discussions does not mean that Congress provided the EPA with discretion to act on the SIPs and FIPs at issue in this case by whatever date it chooses.

The Court finds that Guardians/NPCA have clearly asserted a nondiscretionary duty claim, rather than a unreasonable delay claim.  It is undisputed that Guardians/ NPCA gave the requisite 60 day notice to the EPA prior to filing suit.  Moreover, they were not required to provide notice to North Dakota. Thus, Guardians/NPCA provided sufficient notice to commence a § 7604(a)(2) action, and the Court is not deprived of subject-matter jurisdiction.

**B.     WHETHER THE PROPOSED CD VIOLATES THE CAA**

Although a consent decree may provide for greater relief than a district court could award, "the parties may not agree to take action that conflicts with or violates the statute upon which the complaint was based." *Firefighters*, 478 U.S. at 526.

North Dakota asserts that the Proposed CD is contrary to the CAA because it would authorize the EPA to propose a regional haze FIP for North Dakota concurrent with a proposed partial or complete denial of North Dakota's pending March 3, 2010. RH SIP.   North Dakota contends that before the EPA can proceed in promulgating a regional haze FIP, the CAA requires the EPA to assess the submitted SIP, develop a proposed rule to approve or disapprove of that SIP, solicit public comment, and then take final action on whether to approve that SIP.  (Doc. # 56 at 17-18.)  However, the EPA asserts that it "is not proposing to take final action on a regional haze FIP for North Dakota prior to making a determination on North Dakota's SIP revision."  (Doc. # 65 at 8.)  The EPA's September 1, 2011 proposal, which it has already published in the *Federal Register*, confirms the truth of the EPA's position, *i.e.*, that the EPA is pro-ceeding as North Dakota contends they should proceed.[8]

---

[8]  In the event that final action is not taken on North Dakota's RH SIP before the schedule calls for the promulgation of a final FIP (January 26, 2012), the Court notes that it appears the EPA would nonetheless be authorized to promulgate a regional haze FIP.  The CAA requires the EPA to promulgate a FIP within 2 years of finding that a State failed to make a required SIP submission.  That duty remains "**unless** the State corrects the deficiency, **and** the Administrator approves the plan or plan revision, **before** the Administrator promulgates such [FIP]."  42 U.S.C. § 7410(c) (emphasis added). As North Dakota so readily points out, the EPA has not issued a final rulemaking approving North Dakota's RH SIP; thus, the EPA's obligation to promulgate a FIP remains.  Moreover, requiring the EPA to take final action on an untimely

North Dakota also argues that the EPA has forfeited its statutory authority to promulgate a FIP because it failed to act by the mandatory deadline.  This argument is simply untenable.  When Congress directs an agency to act by a particular deadline, the agency is not deprived of authority merely because it failed to act by that deadline. *Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 161 (2003); *Brock v. Pierce Ctny.*, 476 U.S. 253, 260 (1986) ("We would be most reluctant to conclude that every failure of an agency to observe a procedural requirement voids subsequent agency action, especially when important public rights are at stake"); *United States v. Dolan*, 571 F.3d 1022, 1027 (10th Cir. 2009) ("It would be a strange thing if a bureaucracy . . . could avoid a congressional mandate by unlawful delay").   Moreover, the citizen-suit provision, under which this action is brought, provides for a specific remedy when the EPA fails to complies with the statutory deadlines – an order by a district court compelling the agency to take action.  *See* 42 U.S.C. § 7604(a)(2).  A determination that the EPA's authority to promulgate a FIP evaporates after the statutory deadline has passed would render this remedy a nullity.

Despite missing its deadline to promulgate a FIP, the EPA could approve or disapprove of the Excess Emissions SIP or promulgate a regional haze FIP without this

---

SIP could potentially further delay the promulgation of mandatory FIPs.  Such delay would be contrary to the goals of the CAA, which sets forth a schedule for the prompt enactment of such regulations.  The Court also notes that North Dakota's construction of the Act would seemingly allow a state to indefinitely postpone the promulgation of a FIP by filing inadequate SIP after inadequate SIP, and demanding that the EPA approve or disapprove of them before promulgating a FIP.

consent decree; indeed, the CAA mandates that it does so.  The Proposed CD merely establishes a timetable by which the EPA must act.  The Court finds that there is nothing in the Proposed CD that exceeds the bounds of what the EPA could do under the law.  *See Perkins v. City of Chicago Heights*, 47 F.3d 212, 216 (7th Cir. 1995) ("parties can only agree to that which they have the power to do outside of litigation").

## C.   WHETHER THE PROPOSED CD IS FAIR

As previously stated, fairness has both substantive and procedural components. *See Cannons Eng'g*, 899 F.2d at 86.  North Dakota contends that the Proposed CD lacks both.

### 1.   Procedural Fairness

With respect to procedural fairness, North Dakota argues that the Proposed CD is procedurally unfair because it was not given opportunity to participate in settlement discussions.  The Court finds that North Dakota had no right to such participation. Intervention provided North Dakota with the right to "have its objections heard"; however, that right does not confer upon it "the power to block the decree merely by withholding its consent."  *See Firefighters*, 478 U.S. at 528.  An intervening party cannot "preclude other parties from settling their own disputes."  *Id.* at 528-29; *Cannons Eng'g*, 899 F.2d at 93 ("So long as it operates in good faith, the EPA is at liberty to negotiate with whomever it chooses."); *see also United States v. BP Exploration & Oil Co.*, 167 F. Supp. 2d 1045, 1052 (N.D. Ind. 2001) ("[t]here is no requirement that the Government allow third parties to participate in settlement negotiations.").

19

Of course, parties who resolve litigation through settlement may not dispose of the claims of third parties or impose duties or obligations on a third party. *See Firefighters*, 478 U.S. at 529. The Proposed CD does not impose any duties or obligations on North Dakota, nor does it preclude North Dakota from bringing any claims. All the Proposed CD does is establish a schedule by which the EPA must act. The schedule imposes specific obligations on the EPA, not on North Dakota. Thus, the Proposed CD does not bind North Dakota "to do or not to do anything." *Firefighters*, 478 U.S. at 529-30.

Nevertheless, North Dakota argues that "it is North Dakota and its citizens that will be directly harmed by the timetable established and the authority granted to EPA in the Proposed CD." (Doc. # 56 at 22.) The Court is not convinced. As explained in the preceding section, the EPA's duty to promulgate a regional haze FIP was not extinguished by the EPA's failure to act in a timely fashion. Thus, the EPA has an ongoing duty to promulgate such a FIP and must do so with or without entry of this Proposed CD. Given that EPA has both the authority and the duty to take these actions without entry of the consent decree, no prejudice to North Dakota would result from entering the Proposed CD.[9]

---

[9] This is not to say that the Proposed CD serves no utility. The EPA has missed numerous deadlines and failed to perform many actions. The Proposed CD sets forth a schedule and constitutes a judicially enforceable commitment by the EPA to perform its mandatory duties. In the absence of a consent decree, if it determined that the EPA failed to meet its mandatory duties, the Court would be required to compel agency and impose a schedule by which the EPA must act. The EPA is in a superior position to this Court with respect to assessing its own capabilities. The EPA has stated that the timetable established

In addition, North Dakota's "contention that it was denied a role in the settlement process is undermined by the fact that, in accordance with the CAA and federal regulations, it was afforded an opportunity to comment on the proposed settlement." *Kerr-McGee*, 2008 WL 863975, at *7. Not only did North Dakota embrace that opportunity, but also, it was allowed to present its arguments directly to this Court. "The fact that the [EPA] did not ultimately adopt [North Dakota's] adverse comments, does not mean that [North Dakota] was denied a chance to participate in the process of finalizing the proposed consent decrees." *Id.* (quoting *United States v. Brook Village Assocs.*, No. Civ.A. 05-195, 2006 WL 3227769, at *5 (D.R.I. Nov. 6, 2006)).

More fundamentally, the Court finds that the negotiation process was more than adequate. The Proposed CD is the product of four months of vigorous, adversarial negotiations undertaken by experienced counsel. As the Settling Parties assert, neither party held any undue advantage over the other in the negotiations, and the Proposed CD was finalized after several iterations which involved give and take by both sides. The Court has no reason to suspect that the negotiations were anything but candid, open, and reflective of the bargaining balance. *See Cannons Eng'g*, 899 F.2d at 86. ("a court should ordinarily look to the negotiation process and attempt to gauge its candor, openness, and bargaining balance.").

---

by the Proposed CD is "consonant with EPA's resources and competing priorities." (Doc. # 49 at 17.) Thus, the Proposed CD establishes a schedule that is reasonable, practical, and satisfactory to the Settling Parties. By creating a judicially enforceable commitment, the Proposed CD achieves certainty for the Settling Parties that the overdue actions will be taken.

2.    <u>Substantive Fairness</u>

In addition to arguments already discussed, North Dakota contends that the Proposed CD is substantively unfair because it contains a more aggressive timetable for the EPA to promulgate a FIP for North Dakota than for Wyoming, Colorado, or Montana. The Court again finds that this is no impediment to entry of the Proposed CD.  The EPA, like any other federal agency, does not have infinite resources.  Thus, it is reasonable for the EPA to spread its action dates over a period of months.  Because the EPA was required to address North Dakota's interstate transport regulations by September 1, 2011, pursuant to the consent decree entered in the District Court for the District of Northern California, the EPA reasonably chose to act on North Dakota's regional haze implementation plans before acting on other states' plans.  North Dakota argues that this "aggressive timetable" will "unnecessarily constrain" the EPA's response to North Dakota's RH SIP.  However, the deadlines set forth in the Proposed CD for the EPA to establish a final FIP for North Dakota – January 26, 2012 – is well after the deadline that would have applied under the CAA.

Accordingly, the Court finds the Proposed CD to be both procedurally and substantively fair.

**D.    WHETHER THE DECREE IS REASONABLE**

The Court next addresses whether the Proposed CD is reasonable and consistent with the CAA.  The Proposed CD provides corrective justice through the establishment of deadlines by which the EPA will take action on SIPs and/or FIPs that the CAA required the EPA to take months ago.  These deadlines will ensure that the EPA fulfills its duties and obligations under the CAA by a date certain.  Further, the deadlines set forth are acceptable both to the environmental organizations that initiated these lawsuits and to the EPA.  The Court notes that a number of commentators, including North Dakota, have questioned the reasonableness of the schedule set forth in the Proposed CD.  However, the duty to comply with this schedule falls solely on the EPA, and the EPA has maintained that the deadlines are practical and can be met.  (Doc. # 49 at 8.)  The Court will defer to the EPA's assessment of its own capabilities, rather than the speculative opinions of outside commentators.

As the EPA has already missed the deadline to meet its statutory obligations, the promulgation of a FIP (or the approval of a SIP), should be done with all practical expediency.  In the instant case, the Settling Parties agree that the dates set forth by the Proposed CD will accomplish that purpose.  The Proposed CD achieves certainty for both parties, and outweighs the possibility that either party might achieve a better result through protracted and costly litigation.  Moreover, additional litigation would take time, further delaying agency action.  Thus, "the decree will likely lead to legal and

regulatory compliance in far less time than if the Settling Parties had litigated the matter." *Kerr-McGee*, 2008 WL 863975, at *11.

Finally, the Court finds that the Proposed CD is consistent with the purposes of the CAA. By providing a judicially enforceable commitment to take action on these SIPs and/or FIPs, the Proposed CD will promote the national goal of preventing any future, and remedying any existing, impairments in visibility in mandatory class I areas that are caused by manmade air pollution. *See* 42 U.S.C. § 7491. Certainly, then, the Proposed CD is in concert with the goals of the CAA and will further the public interest. Thus, the Court finds that the Proposed CD is reasonable.

**E.      ADEQUACY OF THE RECORD**

North Dakota's final argument is that the Settling Parties did not advise the Court of significant developments related to North Dakota's RH SIP, which purportedly impact the scope of the Proposed CD as it relates to North Dakota. (Doc. # 56 at 23.) Specifically, North Dakota points to an action currently pending before the District Court of North Dakota related to a 2006 Consent Decree between North Dakota, the EPA, and defendant power plants. *See United States v. Minnkota Power Coop.*, No. 06-cv-034, Doc. # 8 (D.N.D. July 28, 2006) (order entering consent decree). In that action, the EPA has petitioned for dispute resolution under the 2006 Consent Decree, alleging violations of the best available control technology ("BACT") requirements of the CAA's preventions of significant deterioration program at one of the defendant power plants. (*See* Doc. # 38-11.)

North Dakota asserts that the Court should not enter the Proposed CD because the Settling Parties failed to inform the Court of developments in this action and, therefore, there is not an adequate record upon which the Court may assess the Proposed CD's adequacy and reasonableness.  First, the Court notes that the Settling Parties did mention this proceeding in their Motion to Enter Consent Decree.  (Doc. # 49 at 9 n.5.)  More importantly, the North Dakota action has no relevance to the relief requested in this case.  The dispute resolution in North Dakota is an enforcement action involving compliance with prevention of significant deterioration requirements under 42 U.S.C. § 7475, not deadlines by which the EPA must act on North Dakota's Excess Emission SIP or promulgate a regional haze FIP.  The Proposed CD does not contain any requirements for what content must be included in the SIPs or FIPs; it merely sets forth a schedule by which the EPA must act.  In short, the Court finds that the action currently pending in North Dakota has no bearing on the relief sought in this case.

The Proposed CD lodged with the court sets forth all the terms of the settlement and was published in the *Federal Register*, making the decree available to non-parties and the public for comment.  As the enforcement action currently pending in the District Court for the State of North Dakota is unrelated to the action pending before this Court, the information has no affect on this Court's finding that the Proposed CD is fair, reasonable, and in harmony with the CAA.  The Settling Parties presented the Court with an adequate record to enable the Court to determine whether the terms of the CD were fair.  *See United States v. Davis*, 261 F.3d 1, 23 (1st Cir. 2001) (affirming entry of

25

consent decree where district court found the parties offered a sufficient factual record and the decree was made publicly available for comment).

## IV. **CONCLUSION**

Based on the foregoing, the Court finds that it has subject-matter jurisdiction over this action, and that the Proposed CD comes within the general scope of the pleadings and furthers the objectives upon which the complaints were based in these consolidated cases.  Moreover, the Court finds the Proposed CD to be fair, reasonable, in the public interest, and consistent with the CAA.

Accordingly, the Settling Parties' Motion to Enter the Consent Decree (Doc. # 49) is GRANTED.  The Consent Decree (Doc. # 49-1) is hereby entered.

North Dakota's Motion to Dismiss (Doc # 40) is DENIED AS MOOT.

Plaintiff's Motion for Partial Summary Judgment on Liability (Doc. # 9) is DENIED AS MOOT.

For the foregoing reasons, these two consolidated cases are hereby DISMISSED.  However, the Court retains jurisdiction to enforce the Consent Decree.

DATED:  September   27  , 2011

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge